UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FERNANDO FRANCISCO AGUIRRE-URBINA,<br><br>　　　　　　　　　Petitioner,<br><br>　　v.<br><br>BRYAN S WILCOX, et al.,<br><br>　　　　　　　　　Respondents. | CASE NO. C18-1743-TSZ-BAT<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Fernando Aguirre-Urbina brings this 28 U.S.C. § 2241 immigration habeas action to obtain release from prolonged detention or a bond hearing. The Government has moved to dismiss, arguing that Mr. Aguirre is lawfully detained pending resolution of the removal proceedings against him. Mr. Aguirre opposes dismissal. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Government's motion to dismiss be **GRANTED**, Mr. Aguirre's habeas petition be **DENIED**, and this action be **DISMISSED** with prejudice.[1]

---

[1] Mr. Aguirre's request for oral argument, Dkt. 8 at 1, is DENIED. The parties have thoroughly briefed the issues and oral argument would not be of assistance to the Court. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (court may deny request for oral argument when parties submit briefs to the court).

REPORT AND RECOMMENDATION - 1

**BACKGROUND**

Mr. Aguirre is a native and citizen of Mexico who was brought illegally into the United States in 1992 when he was three years old. Dkt. 1 at ¶ 17; Dkt. 5-1 at ¶ 4; Dkt. 8-1 at ¶ 2. Since then, he has resided primarily in Mabton, Washington. Dkt. 1 at ¶ 17; Dkt. 8-1 at ¶ 2. He is the father of three U.S. citizen children, who live with their maternal grandmother. Dkt. 1 at ¶ 14. He has a long history of severe mental illness and has been diagnosed with major depressive disorder with psychotic features, but he has never exhibited violent behaviors or tendencies. *Id.* at ¶ 15; Dkt. 8-1 at ¶ 14.

In September 2009, Mr. Aguirre was arrested in Benton County, Washington, for driving without a license. Dkt. 5-1 at ¶ 6; Dkt. 8-1 at ¶ 6. Officers from U.S. Immigration and Customs Enforcement ("ICE") encountered him while he was incarcerated at the Prosser County Jail and took him into custody on September 14, 2009. Dkt. 5-1 at ¶ 6; Dkt. 8-1 at ¶ 6. ICE transferred him to the Northwest Detention Center ("NWDC") in Tacoma, Washington, and initiated removal proceedings against him. Dkt. 1 at ¶ 18; Dkt. 1-10; Dkt. 5-1 at ¶ 7; Dkt. 8-1 at ¶ 6. On September 18, 2009, he posted a $5,000 bond and was released from ICE custody. Dkt. 5-1 at ¶¶ 7-8.

Mr. Aguirre's removal proceedings were continued multiple times while he sought legal representation and attempted to submit applications for relief *pro se*. Dkt. 1 at ¶ 18. In December 2010, he submitted an application for cancellation of removal through his attorney at the time. *Id.*

On January 11, 2012, while his removal proceedings were still pending, Mr. Aguirre was arrested and charged with drug-related crimes. Dkt. 1 at ¶ 18. His removal proceedings were administratively closed pending the outcome of his new criminal charges. *Id.* Facing a potential

REPORT AND RECOMMENDATION - 2

sentence of 8-12 years in prison, Mr. Aguirre entered into a plea deal. Dkt. 8-1 at ¶ 8. On May 31, 2012, he was convicted of Possession of a Controlled Substance (Methamphetamine) with Intent to Deliver, Delivery of a Controlled Substance (Methamphetamine), and Possession of a Controlled Substance (Marijuana) with Intent to Deliver, and sentenced to one year and a day in jail. Dkt. 5-1 at ¶ 9; Dkt. 8-1 at ¶ 8. He served approximately eight months. Dkt. 8-1 at ¶ 8.

On September 6, 2012, Mr. Aguirre completed his sentence and was transferred to ICE custody at the NWDC. Dkt. 5-1 at ¶ 11; Dkt. 8-1 at ¶ 9. ICE cancelled his bond due to the new convictions and his removal proceedings were re-calendared. Dkt. 5-1 at ¶ 11. As discussed below, Mr. Aguirre's removal proceedings are ongoing and he has remained in detention since ICE took him into custody over six and a half years ago.[2]

**A.   Mr. Aguirre's removal proceedings**

In March 2013, Mr. Aguirre filed an application for asylum, withholding of removal, and protection under the Convention Against Torture, through counsel. Dkt. 1 at ¶ 19. In February 2014, he filed, also through counsel, a Motion for Judicial Finding Regarding Competency and Implementation of Appropriate Safeguards. *Id.* Despite Mr. Aguirre's counsel and the Department of Homeland Security ("DHS") raising the issue of his competency, the immigration judge ("IJ") held the first merits hearing on March 4, 2014, without safeguards. *Id.* On April 9, 2014, the IJ deemed Mr. Aguirre competent, denied his application for relief, and ordered him removed to Mexico. *Id.*; Dkt. 5-1 at ¶ 12.

Mr. Aguirre appealed to the Board of Immigration Appeals ("BIA") *pro se*. Dkt. 1 at ¶ 20. On July 6, 2015, the BIA remanded because the IJ had not properly analyzed Mr. Aguirre's

---

[2] Mr. Aguirre has submitted a declaration detailing his experiences in detention, including the lack of access to an outdoor yard, activity, and nutrition; transfers to two other institutions that he claims were retaliatory; limited contact visits with his family; and limited mental and physical health care, among other things. *See* Dkt. 8-1.

REPORT AND RECOMMENDATION - 3

competency. *Id.*; Dkt. 5-1 at ¶ 14. The IJ held a judicial competency hearing on January 16, 2016.[3] Dkt. 1 at ¶ 20. On June 26, 2016, the IJ issued a written decision finding that Mr. Aguirre was incompetent but that the presence of counsel was an adequate safeguard. *Id.* at ¶ 21. The IJ also denied Mr. Aguirre's application for relief from removal and ordered him removed to Mexico. *Id.* Mr. Aguirre appealed *pro se*, and the BIA remanded the case for another competency hearing to determine whether he could proceed *pro se* on appeal. *Id.* at ¶ 22; Dkt. 5-1 at ¶ 17. Mr. Aguirre appeared *pro se* at two competency hearings in September 2016, and the IJ found that he was incompetent to represent himself on appeal. Dkt. 1 at ¶ 22. Counsel was appointed, and on September 8, 2017, the BIA dismissed Mr. Aguirre's appeal and ordered him removed to Mexico. *Id.*; Dkt. 5-1 at ¶ 19.

In September 2017, Mr. Aguirre filed a *pro se* petition for review and motion for stay with the Ninth Circuit Court of Appeals. Dkt. 1 at ¶ 23; Dkt. 5-1 at ¶ 20. On February 28, 2018, the Ninth Circuit temporarily stayed Mr. Aguirre's removal pending his appeal. Dkt. 1 at ¶ 23. The court also appointed *pro bono* counsel to represent him. *Id.* His petition for review remains pending and oral argument was scheduled for March 14, 2019. *See Aguirre-Urbina v. Barr*, No. 17-72602, Dkt. 23 (9th Cir. Dec. 30, 2018).

**B.   Mr. Aguirre's custody determinations**

Mr. Aguirre has had four bond hearings since September 2012. In September 2013 and December 2014, Mr. Aguirre had *Rodriguez*[4] bond hearings. Dkt. 5-1 at ¶¶ 21-22. The IJ found that he was a flight risk and a danger to the community and denied bond. *Id.* Mr. Aguirre did

---

[3] The habeas petition states that the competency hearing took place on January 16, *2014*, but based on the chronology of events, it appears the hearing took place in 2016.

[4] The reference is to *Rodriguez v. Robbins* ("*Rodriguez II*"), 715 F.3d 1127 (9th Cir. 2013) (noncitizens detained for prolonged periods of time under 8 U.S.C. § 1226(a) are entitled to bond hearings).

REPORT AND RECOMMENDATION - 4

not appeal. *Id.*

On November 8, 2016, Mr. Aguirre had a third *Rodriguez*[5] bond hearing, and again the IJ denied bond, finding that he presented a flight risk and a danger to the community. *Id.* at ¶ 24; Dkt. 1-8; Dkt. 1-9. Mr. Aguirre appealed, and the BIA remanded for further fact finding on whether DHS had met its burden under *Rodriguez* of justifying continued detention by clear and convincing evidence. Dkt. 1-7; Dkt. 8-2 at 4-5. On June 7, 2017, the IJ held a hearing and found that DHS failed to meet its burden of showing Mr. Aguirre was a flight risk, but that it presented clear and convincing evidence that he was a danger to the community. Dkt. 5-1 at ¶ 25; Dkt. 8-2 at 17. Accordingly, the IJ denied bond. Dkt. 5-1 at ¶ 25; Dkt. 8-2 at 17; Dkt. 1-6. Mr. Aguirre did not appeal. Dkt. 5-1 at ¶ 25.

On June 7, 2017, Mr. Aguirre filed a request for a *Casas*[6] bond hearing. Dkt. 5-1 at ¶ 26. The IJ denied the request, finding that the standards for *Casas* and *Rodriguez* bond hearings were the same, and Mr. Aguirre had previously had *Rodriguez* bond hearings. Dkt. 1-4. The IJ also found that she no longer had jurisdiction to hold a *Rodriguez* bond hearing in light if the Supreme Court's decision in *Jennings*, which reversed *Rodriguez III*. Dkt. 1-4. On November 14, 2018, the BIA dismissed Mr. Aguirre's appeal, reasoning that the IJ did not have jurisdiction to hold a *Rodriguez* hearing and that *Casas-Castrillon* applies only to lawful permanent residents. Dkt. 1-3.

## DISCUSSION

Mr. Aguirre argues that his prolonged detention violates the Fifth and Eighth

---

[5] This time, the reference is to *Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060, 1084-85, 1087 (9th Cir. 2015), *rev'd sub nom Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) (noncitizens detained for prolonged periods of time under § 1226(a) are entitled to automatic bond hearings every six months).

[6] The reference is to *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008) (noncitizens detained under § 1226(a) for prolonged periods of time are entitled to a bond hearing).

REPORT AND RECOMMENDATION - 5

Amendments.[7] As discussed below, Mr. Aguirre's detention comports with constitutional requirements, and therefore the Government's motion to dismiss should be granted.

**A.      Fifth Amendment**

Mr. Aguirre contends that his continued detention violates due process because the IJ and BIA erred as a matter of law in denying bond and because his detention has become unreasonable and indefinite. Federal district courts have habeas jurisdiction to review bond hearing determinations for constitutional claims and legal error. *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). Although an IJ's discretionary judgment may not be judicially reviewed, 8 U.S.C. § 1226(e), "claims that the discretionary process itself was constitutionally flawed are cognizable . . . ." *Singh*, 638 F.3d at 1202. Thus, the Court has jurisdiction over Mr. Aguirre's claims. As discussed below, the IJ did not err and Mr. Aguirre's detention is not unconstitutionally unreasonable or indefinite. Accordingly, Mr. Aguirre's continued prolonged detention does not violate his due process rights.

**1.      Statutory framework for immigration detention**

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of noncitizens, such as Mr. Aguirre, who are in removal proceedings. Section 1226(a) grants DHS the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.[8] 8 U.S.C. § 1226; *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 847-

---

[7] Contrary to the Government's suggest, Dkt. 5 at 5-6, Mr. Aguirre does not allege a violation of § 1226(a), *see* Dkt. 1 at 10-13.

[8] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role

48 (2018) (§ 1226(a) authorizes detention during removal proceedings); *Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process.").

When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236.1(d)(1). At the bond redetermination hearing, the burden is on the detainee to show to the satisfaction of the IJ that he warrants release on bond. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). Once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e).

If the IJ denies bond, the detainee may appeal to the BIA. 8 C.F.R. §§ 236.1(d)(3), 1003.19(f). If the BIA affirms the IJ's decision, the detainee may seek habeas relief from the district court. *Leonardo v. Crawford*, 646 F.3d 1157, 1159-61 (9th Cir. 2011); *Sun v. Ashcroft*, 370 F.3d 932, 941 (9th Cir. 2004).

Until recently, Ninth Circuit jurisprudence required noncitizens detained under § 1226(a) to be provided automatic bond hearings every six months at which the government was required to justify continued detention by clear and convincing evidence. *Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060, 1084-85, 1087 (9th Cir. 2015), *rev'd sub nom Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). In *Jennings*, the Supreme Court reversed, explaining that the

---

in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 7

Ninth Circuit had misapplied the canon of constitutional avoidance and that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of" periodic bond hearings where the government bears the burden. 138 S. Ct. at 847. The Supreme Court did not decide whether the Constitution requires such periodic hearings, and remanded to the Ninth Circuit for consideration of that question. The Ninth Circuit has remanded to the district court to determine the minimum requirements of due process, including reassessing and reconsidering both the clear and convincing evidence standard and the six-month bond hearing requirement. *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 255-56 (9th Cir. 2018).

### 2. Due process requirements for bond hearings

To detain a noncitizen for a prolonged period of time while removal proceedings are pending, due process requires the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing. *See Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011); *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1146-47 (N.D. Cal. 2018) (holding that *Jennings* did not reverse standards announced in *Singh*); *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 224 n.12 (3d Cir. 2018) (adopting *Singh*'s clear and convincing evidence standard post-*Jennings*); *Darko v. Sessions*, 342 F. Supp. 3d 429, 435-36 (S.D.N.Y. Oct. 19, 2018) (same); *Hernandez v. Decker*, No. 18-cv-5026, 2018 WL 3579108, at *10-*11 (S.D.N.Y Jul. 25, 2018) (same); *see also Ngo v. INS*, 192 F.3d 390, 398 (3d Cir. 1999) ("Measures must be taken to assess the risk of flight and danger to the community on a current basis.").

To make this determination, the IJ may consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and

REPORT AND RECOMMENDATION - 8

whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States.  *Guerra*, 20 I. & N. Dec. at 40; *see also Singh*, 638 F.3d at 1206.

The Ninth Circuit has provided additional guidance:  "Although [a noncitizen's] criminal record is surely relevant to a bond assessment, . . . criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness.  Rather, the recency and severity of the offenses must be considered."  *Singh*, 638 F.3d at 1206.  "[B]ecause the IJ must consider 'the recency and severity of [any past] offenses,' evidence of criminal conduct grows less powerful as it becomes less current.  Thus, the passage of time is undeniably relevant and the IJ must consider it."  *Ramos v. Sessions* ("*Ramos II*"), 293 F. Supp. 3d 1021, 1034 (N.D. Cal. 2018) (internal citation to *Singh* omitted).  This does not mean, however, "that criminal conviction evidence inevitably loses its persuasive force" or that the government must present new evidence of dangerousness at each successive bond hearing.  *Id.* at 1033-34.

Moreover, "not every criminal record would support a finding of dangerousness. . . .  [A] conviction could have occurred years ago, and the [noncitizen] could well have led an entirely law-abiding life since then."  *Singh*, 638 F.3d at 1206.  The IJ also must consider whether the detainee's circumstances have changed such that criminal conduct is now less likely.  *Id.* at 1205 ("[T]he BIA focused on Singh's prior convictions for petty theft, receiving stolen property and substance abuse.  Under a clear and convincing evidence standard, the BIA might conclude that

REPORT AND RECOMMENDATION - 9

Singh's largely nonviolent prior bad acts do not demonstrate a propensity for future dangerousness, in view of evidence showing that his drug use, which was the impetus for his previous offenses, has ceased.").

### 3. The Court's standard of review

In challenging the IJ's denial of bond, Mr. Aguirre argues that the IJ erred in finding that the government presented clear and convincing evidence that justified his continued detention. Dkt. 8 at 9-14. "The clear and convincing evidence standard is a high burden and must be demonstrated in fact." *Ramos II*, 293 F. Supp. 3d at 1030 (quotation and citation omitted). The Ninth Circuit has not provided guidance "on precisely what standard of review a district court should apply in reviewing an IJ's application of the clear and convincing evidence standard of proof." *Id.* In *Ramos II*, the court undertook an extensive discussion of the appropriate standard of review, including reviewing numerous district court decisions from within the Ninth Circuit. Ultimately, the court concluded that it "reviews the IJ's factual findings for clear error, and independently reviews the facts, findings, and record to determine, *de novo*, whether those facts clearly and convincingly demonstrate that [the petitioner] poses such a danger to the community [or flight risk] that [he or she] must remain detained, including because no alternative to detention could protect the community [or prevent flight]." *Id.* at 1032-33. The Court agrees with *Ramos II*'s analysis and adopts this standard of review.

### 4. Sufficiency of Mr. Aguirre's bond hearings

Mr. Aguirre challenges both the IJ's June 2017 denial of bond and the BIA's November 2018 denial of his request for a new bond hearing.[9] *See* Dkt. 1 at ¶ 29.

---

[9] Mr. Aguirre did not appeal the June 2017 bond decision to the BIA. The Government, however, does not argue that the Court should dismiss the petition for failure to exhaust this claim. Accordingly, the Court does not address prudential exhaustion.

### a.     June 2017 bond hearing

The parties dispute whether the IJ properly based his dangerousness finding on Mr. Aguirre's 2012 conviction and gave due consideration the recency and severity of the crimes such that he considered Mr. Aguirre's current dangerousness.  *See* Dkt. 5 at 6-7; Dkt. 8 at 9-14.  At the June 2017 bond hearing, the government argued that Mr. Aguirre should remain detained because he was convicted in 2012 of delivery of methamphetamine, possession with intent to deliver methamphetamine, and possession with intent to deliver marijuana.  Dkt. 8-2 at 7.  The government emphasized that Mr. Aguirre was out on immigration bond at the time he committed the crimes, and therefore he demonstrated an inability to maintain in the community without committing crimes while on immigration bond.  *Id.* at 17.  The government also informed the IJ that when police arrested Mr. Aguirre for those offenses, they found a semi-automatic gun with ammunition in his house.  *Id.* at 8.  The IJ asked how long Mr. Aguirre was in prison, and the government informed him that Mr. Aguirre was sentenced to 12 months and a day but served less time.  *Id.*

Mr. Aguirre's counsel argued that all of his convictions were for non-violent crimes.  *Id.* at 9.  Counsel pointed out that the firearm the government referenced was an allegation in a police report and that Mr. Aguirre was never convicted of possession of a firearm.  *Id.* at 11.  Counsel also described Mr. Aguirre's strong family ties in Washington and the hardship his family was suffering while he was detained.  *Id.* at 11-16.  Counsel argued that Mr. Aguirre has been sober for several years and a model detainee.  *Id.* at 15.  With respect to the psychiatric evaluation Mr. Aguirre had submitted, the IJ asked whether his condition made it more or less likely that he could harm people.  *Id.* at 16.  Counsel did not directly answer the question but asserted it was a humanitarian factor to consider.  *Id.*

The IJ denied bond, finding that the government did not present clear and convincing evidence that Mr. Aguirre presents a flight risk but that the government met its burden with respect to demonstrating that he "is a continued danger." *Id.* at 17.  The IJ explained:

> I realize he may not have physically beat anyone up from the criminal history. But the convictions—particularly surrounding methamphetamines, I mean, it's a scourge on the community. The government did indicate when he was out on a bond before, he committed these crimes. And I think that's a danger.

*Id.*

The Court finds no error in the IJ's decision. The IJ took into account the severity of the offenses, noting that although Mr. Aguirre did not physically injure anyone, the distribution of methamphetamines harms the community, and Mr. Aguirre was out on immigration bond at the time he engaged in criminal activity. The IJ considered how long ago Mr. Aguirre was convicted and the length of the sentence. The IJ also assessed Mr. Aguirre's current dangerousness, finding that he presented "a continued danger." The Court concludes that clear and convincing evidence supports the IJ's dangerousness finding.

Mr. Aguirre nevertheless contends that the IJ did not meaningfully assess how the nonviolent drug convictions made him a danger to the community five years later, focusing on the fact that he has been detained six times longer than his criminal sentence. *See* Dkt. 8 at 10-14. There is no dispute that the length of Mr. Aguirre's immigration detention has far exceeded his criminal sentence. However, Mr. Aguirre's sentence was based on a plea deal, and had he proceeded to trial, he potentially faced a sentence of 8-12 years in prison. *See* Dkt. 8-1 at ¶ 8. The length of his immigration detention does not exceed this measure of the severity of the crimes he committed. In addition, the number of years since his criminal conviction is not strongly probative of dangerousness because he has been incarcerated or detained since his arrest, rather than living a law-abiding life in the community. *See Singh*, 638 F.3d at 1206

REPORT AND RECOMMENDATION - 12

(explaining that "not every criminal record would support a finding of dangerousness. . . . [because] a conviction could have occurred years ago, and the [noncitizen] could well have led an entirely law-abiding life since then").

Mr. Aguirre relies on two district court cases to argue that his criminal convictions are insufficient to justify his continued detention, *Mau v. Chertoff*, 562 F. Supp. 2d 1107 (S.D. Cal. 2008), and *Calderon-Rodriguez v. Wilcox*, No. 18-1373, 2019 WL 487709 (W.D. Wash. Jan. 9, 2019), *R & R adopted*, 2019 WL 486409 (W.D. Wash. Feb. 7, 2019). Both cases are distinguishable. In *Mau*, the IJ denied release where the petitioner, who had been detained for over three years, had two misdemeanor DUIs and one felony DUI that were between four and six years old. 562 F. Supp. 2d at 1118. The court found that the IJ erred in relying on the past convictions to find present dangerousness, reasoning in part, "[T]he Government presented no evidence tending to show that, even with appropriate conditions of release, Petitioner would pose a threat to the community if released." *Id.* By contrast, Mr. Aguirre committed serious drug-related felonies while released on immigration bond, which supports the IJ's conclusion that he would present a danger to the community if released again.

In *Calderon-Rodriguez*, the IJ found that the petitioner, who had been detained for over six and a half years at the time he filed his habeas petition, presented a flight risk and a danger to the community based on DUIs from 2005 and 2007, and a DUI/vehicular assault conviction from 2011. 2019 WL 487709, at *1. The petitioner had never been sentenced to any jail time, even though the standard range for his offender score for the DUI/vehicular assault conviction was 3-9 months. *Id.* at *9. In this case, Mr. Aguirre's crimes were much more serious; instead of facing a 9-month sentence like the petitioner in *Calderon-Rodriguez*, Mr. Aguirre potentially faced 8-12 years in prison if he was convicted at trial instead of entering a plea bargain. Neither *Calderon-*

REPORT AND RECOMMENDATION - 13

*Rodriguez* nor *Mau* convince the Court that the IJ erred in finding the Government met its burden of presenting clear and convincing evidence that Mr. Aguirre is a danger to the community.

### b. November 2018 denial of request for a new bond hearing

Mr. Aguirre contends that the immigration courts erred in denying his request for a *Casas* bond hearing, arguing that due process requires that he have a forum to contest the necessity of his continued detention. *See* Dkt. 1 at ¶ 29.

As noted above, the IJ denied Mr. Aguirre's request for a *Casas* bond hearing, finding that the standards for *Casas* and *Rodriguez* bond hearings were the same, Mr. Aguirre had previously had *Rodriguez* bond hearings, and the IJ no longer had jurisdiction to hold a *Rodriguez* bond hearing in light of *Jennings*. Dkt. 1-4. The BIA dismissed Mr. Aguirre's appeal, reasoning that the IJ did not have jurisdiction to hold a *Rodriguez* hearing and that *Casas-Castrillon* applies only to lawful permanent residents. Dkt. 1-3.

Mr. Aguirre challenges the BIA's reasoning that *Casas-Castrillon* applies only to lawful permanent residents. Dkt. 8 at 18-19. He is correct. *Casas-Castrillon* applies to noncitizens detained under § 1226(a) and is not limited to lawful permanent residents. *Diouf v. Napolitano*, 634 F.3d 1081, 1085, 1088-89 (9th Cir. 2011). Nevertheless, the BIA's error was harmless. In *Casas-Castrillon*, the Ninth Circuit applied the canon of constitutional avoidance and held that "§ 1226(a) must be construed as *requiring* the Attorney General to provide" noncitizens who have been detained for prolonged periods of time with individualized bond hearings. 535 F.3d at 951 (emphasis in original). *Jennings*, however, invalidated the same reasoning in *Rodriguez III*, namely that the statutory text of § 1226(a) could be construed as requiring bond hearings under the canon of constitutional avoidance. *See Jennings*, 138 S. Ct. at 842, 847-48. *Casas-Castrillon*, therefore, does not provide an alternative basis upon which to demand a bond

REPORT AND RECOMMENDATION - 14

hearing. And even before *Jennings*, *Casas-Castrillon* would not have required the IJ and BIA to grant Mr. Aguirre an additional bond hearing because Mr. Aguirre already had an opportunity to contest his continued detention. *See Casas-Castrillon*, 535 F.3d at 949 (holding that the government may not detain a noncitizen for a prolonged period of time "without providing him a neutral forum in which to contest the necessity of his continued detention"). The immigration courts' denial of Mr. Aguirre's request for an additional bond hearing does not violate his statutory or constitutional rights.

### 5. Unreasonable or indefinite detention

The parties dispute whether Mr. Aguirre should be released because his detention has become unreasonable or indefinite. *See* Dkt. 5 at 8-9; Dkt. 8 at 15-19. It is neither.

In *Demore*, a case involving mandatory detention under § 1226(c), Justice Kennedy noted in his concurring opinion, "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became *unreasonable* or unjustified." 538 U.S. at 532 (Kennedy, J., concurring) (emphasis added). Because this case involves discretionary detention under § 1226(a), and Mr. Aguirre has already received a constitutionally adequate bond hearing, his prolonged detention is not unreasonable or unjustified within the meaning of Justice Kenney's concurring opinion in *Demore*.

Mr. Aguirre's detention also is not indefinite. In *Zadvydas v. Davis*, the Supreme Court held that permitting indefinite detention would raise "serious constitutional concerns." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As the Ninth Circuit explained in *Prieto-Romero v. Clark*, however, the fact that Mr. Aguirre's detention does not have a certain end date does not mean

that it is indefinite. 534 F.3d 1053, 1062-65 (9th Cir. 2008). Rather, the question is whether Mr. Aguirre is capable of being removed if and when the order of removal against him is finalized. *Id.* at 1065. There is no indication in the record that the Government will be unable to remove Mr. Aguirre if he loses his legal challenges to his removal order, and therefore his detention is not indefinite.

**B.      Eighth Amendment**

Mr. Aguirre argues that he is entitled to release under the Eighth Amendment's excessive bail and cruel and unusual punishment clauses. *See* Dkt. 1 at ¶¶ 30-31; Dkt. 8 at 19-21. The Eighth Amendment states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.

Mr. Aguirre contends that being held without the possibility of release on bond is the most excessive bail possible, and thus the immigration courts' refusal to hold a bond hearing and set a bond amount violates the Eighth Amendment. Dkt. 8 at 20. He is incorrect. The Excessive Bail Clause does not "accord a right to bail in all cases, but merely [provides] that bail shall not be excessive in those cases where it is proper to grant bail." *Carlson v. Landon*, 342 U.S. 524, 545 (1952); *see also Leader v. Blackman*, 744 F. Supp. 500, 509 (S.D.N.Y. 1990) ("It is well settled that bail may be denied under many circumstances, including deportation cases, without violating any constitutional rights."). In considering the constitutionality of the Bail Reform Act, the Supreme Court has held that the Eighth Amendment does not require release on bail where Congress authorizes pretrial detention based on future dangerousness. *United States v. Salerno*, 481 U.S. 739, 954-55 (1987). Similarly, in this case, Congress has authorized detention during removal proceedings for noncitizens who present a danger to the community. *See* 8 U.S.C. § 1226(a) (authorizing detention during removal proceedings); *Singh*, 638 F.3d at 1206 (explaining

how IJs should assess whether a noncitizen presents a danger to the community).  Mr. Aguirre had a constitutionally sufficient bond hearing, and the IJ denied bond.  In doing so, the IJ did not violate the Excessive Bail Clause.[10]

Mr. Aguirre also asserts that the length and conditions of his civil confinement have so exceeded the bound of reasonableness that his detention amounts to cruel and unusual punishment.  Dkt. 8 at 20.  Citing *Bell v. Wolfish*, 441 U.S. 520 (1979), he argues that the Eighth Amendment permits the government to detain an individual "so long as [the] conditions and restrictions [of his detention] do not amount to punishment."  Dkt. 8 at 19 (quoting *Bell*, 441 U.S. at 536-37 (alterations added by Mr. Aguirre)).  Mr. Aguirre's reliance on *Bell* is misplaced.  First, *Bell* involved the due process clause, not the Eighth Amendment's prohibition against cruel and unusual punishment.  *Bell*, 441 U.S. at 536; *see also id.* at 579 (Stevens, J., dissenting).  Indeed, as Justice Stevens pointed out in his dissenting opinion, the Eighth Amendment only protects convicted criminals from cruel and unusual punishment, not pretrial detainees.  *Id.* at 759 (Stevens, J., dissenting).  Second, *Bell* is a civil rights case in which pretrial detainees challenged the conditions of their confinement, not the government's right to detain them pending trial.  *Id.* at 523, 533-34.  Thus, *Bell* does not support Mr. Aguirre's claim that the Eighth Amendment entitles him to release from detention.  Moreover, to the extent Mr. Aguirre seeks to challenge the conditions of his confinement, such claims must be brought in a civil rights action, not this habeas petition.  *See Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) ("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality

---

[10] The district court cases Mr. Aguirre cites in support of his Excessive Bail argument all involved mandatory detention statutes that prohibited courts from holding bond hearings, and therefore are distinguishable.  *See* Dkt. 8 at 20 (citing *Kellman v. Dist. Dir.*, 750 F. Supp. 625 (S.D.N.Y. 1990); *Leader*, 744 F. Supp. at 509 n.15; *Probert v. INS*, 750 F. Supp. 252 (E.D. Mich. 1990); *Paxton v. INS*, 745 F. Supp. 1261 (E.D. Mich. 1990); *Agunobi v. Thornburg*, 745 F. Supp. 533 (N.D. Ill. 1990)).

REPORT AND RECOMMENDATION - 17

or duration' of confinement. A civil rights action, in contrast, is the proper method of challenging 'conditions of . . . confinement.'") (cited sources omitted). Mr. Aguirre is not entitled to habeas relief on his Eighth Amendment claim.

## CONCLUSION AND RIGHT TO OBJECT

The Court recommends that Mr. Aguirre's habeas petition be **DENIED**, the Government's motion to dismiss, Dkt. 5, be **GRANTED**, and this action be **DISMISSED** with prejudice. A proposed order accompanies this Report and Recommendation.

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **April 4, 2019.** The Clerk should note the matter for **April 5, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 20th day of March, 2019.

/s/ BT
_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge