UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FERNANDO FRANCISCO AGUIRRE-URBINA,

Petitioner,

v.

BRYAN S. WILCOX, Seattle Field Office Deputy Director, U.S. Immigration and Customs Enforcement; DEREK N. BENNER,[1] Acting Deputy Director, U.S. Immigration and Customs Enforcement; JAMES McHENRY, Director, Executive Office for Immigration Review; CHAD F. WOLF,[2] Acting Secretary, U.S. Department of Homeland Security; WILLIAM P. BARR,[3] Attorney General of the United States; and UNITED STATES OF AMERICA,

Respondents.

C18-1743 TSZ

ORDER

THIS MATTER comes before the Court on petitioner Fernando Francisco Aguirre-Urbina's motion for attorney's fees and costs, docket no. 20. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

---

[1] Acting Deputy Director Derek N. Benner is SUBSTITUTED for former Deputy Director Ronald D. Vitiello. *See* Fed. R. Civ. P. 25(d).

[2] Acting Secretary Chad F. Wolf is SUBSTITUTED for former Secretary Kirstjen Nielsen. *Id.*

[3] Attorney General William P. Barr is SUBSTITUTED for former Acting Attorney General Matthew Whitaker. *Id.*

ORDER - 1

**Discussion**

Petitioner brings the pending motion for attorney's fees and expenses under the Equal Access to Justice Act ("EAJA"), which provides in relevant part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . , including proceedings for judicial review of agency action, brought . . . against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Petitioner seeks a total of $18,159.45, which reflects (i) 88.5 hours of attorney time at the rate of $201.60 per hour for work performed in 2018 and the rate of $204.25 per hour for services provided in 2019, and (ii) expenses in the amount of $151.96. Respondents do not challenge the number of hours expended by petitioner's counsel or the hourly rates recited in the motion, which are consistent with the cost-of-living adjustments permitted under EAJA. <u>See</u> 28 U.S.C. § 2412(d)(2)(A); <u>Thangaraja v. Gonzales</u>, 428 F.3d 870, 876-77 (9th Cir. 2005). Rather, respondents oppose the motion for EAJA fees and expenses on grounds that petitioner is not a "prevailing party" within the meaning of § 2412(d)(1)(A) and that their position was "substantially justified." Respondents' arguments lack merit.

**A.     "Prevailing Party"**

EAJA articulates an exception to the "American rule" that private litigants must pay their own attorneys' fees. <u>See</u> <u>Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.</u>, 589 F.3d 1027, 1030 (9th Cir. 2009). EAJA is just one of many fee-shifting statutes, and the term "prevailing party," which is used in virtually all such legislation, is

interpreted consistently to mean an entity that has achieved a "judicially sanctioned" "material alteration" in the legal relationship of the parties. *Id.* A "moral victory" or a mere determination of probable legal merit, which might have "put the handwriting on the wall," is insufficient. *Id.* at 1030-31. To be "prevailing," the party must obtain *actual*, legal or equitable, relief, by virtue of a requirement of the court, and not through a voluntary change in the other side's conduct. *Id.* at 1031; *see* *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) (rejecting the "catalyst theory" pursuant to which a plaintiff was considered a "prevailing party" if the lawsuit brought about a voluntary change in the defendant's behavior).

Respondents do not dispute that, by pursuing a writ of habeas corpus, petitioner achieved a "material alteration" in the legal relationship of the parties. When petitioner initiated this action, he had been in federal custody since September 6, 2012, awaiting final decisions in his removal proceedings and concerning his applications for asylum, withholding of removal, and protection under the Convention Against Torture. *See* Order at 1 (docket no. 13). On May 28, 2019, Immigration Judge Tammy L. Fitting conducted a bond hearing and set bond in the amount of $30,000. *See* Tr. at Track 01 (00:00:01) & Track 03 (00:03:28) (May 28, 2019) (docket no. 22-1); *see also* Custody Order of Immigration Judge, Ex. 1 to Supp. Resp. (docket no. 16-1). Petitioner was released after posting bond, and this action was dismissed without prejudice as moot. *See* Order (docket no. 19). In other words, petitioner achieved the result sought in this litigation, namely an end to his immigration detention, which exceeded 6½ years. *See* *Klamath*, 589 F.3d at 1030 (the "material alteration" must be "relief that the would-be prevailing

party sought"); *see also* <u>Ali v. Gonzales</u>, 486 F. Supp. 2d 1197, 1203 (W.D. Wash. 2007) ("The fact that Petitioners remain out of custody at the present moment is further evidence of their materially altered relationship with the Government.").

Respondents contend, however, that the remedy obtained by petitioner was the consequence of a voluntary capitulation, and he is therefore not a "prevailing party." The record does not support this assertion. On May 17, 2019, the Court directed respondents to show cause why the Court should not grant the habeas petition in part and direct that petitioner be released on appropriate conditions unless, at a new bonding hearing, petitioner's "***current*** danger to the community" was established by clear and convincing evidence.[4] Order at 5 (docket no. 13) (emphasis in original). A copy of the Court's show cause order was provided to Immigration Judge Fitting. <u>See</u> Tr. at Track 01 (00:00:47-00:01:11) (May 28, 2019) (docket no. 22-1).

On May 28, 2019, prior to the deadline for a response to the show cause order, an attorney for the Government, Anthony Capese, told Immigration Judge Fitting that the bond hearing had been "ordered by the District Court." <u>Id.</u> at Track 01 (00:00:47). Capese also informed Immigration Judge Fitting that the show cause order "specifically calls for the government to present clear and convincing evidence that petitioner presents a current danger to the community." <u>Id.</u> at Track 01 (00:01:02). In setting bond, Immigration Judge Fitting indicated that she had "been ordered by the higher court to issue a bond in this case." <u>Id.</u> at Track 03 (00:03:28). Although the Court's show cause

---

[4] An immigration judge had previously ruled that petitioner did not pose a flight risk. <u>See</u> Order at 2 (docket no. 13).

ORDER - 4

order did not in fact require a bond hearing or direct that petitioner be released on bond, both the lawyer representing the Government and Immigration Judge Fitting believed otherwise, and their actions of facilitating or conducting a bond hearing and setting bond, respectively, cannot be viewed as "voluntary." *See* Webster's Third New Int'l Dictionary 2564 (1981) (defining voluntary as "produced in or by an act of choice" or "performed, made, or given of one's own free will").

EAJA's purpose is to "discourage the federal government from using its superior resources unreasonably." *Kholyavskiy v. Schlecht*, 479 F. Supp. 2d 897, 903 (E.D. Wis. 2007). It is essentially an "anti-bully" law. *Id.* If the Court were to adopt respondents' view that petitioner is not a "prevailing party" when, after six years of confinement, he initiated this lawsuit, was forced to respond to a motion to dismiss and to file objections to a magistrate judge's unfavorable report and recommendation, and had to present oral argument at a bond hearing before receiving the opportunity to post a $30,000 bond to secure his release, EAJA would be used to facilitate, rather than deter, governmental bullying. *See id.* at 905-06 (recognizing that, if "prevailing party" is too narrowly construed, the government could "litigate vigorously to wear down the plaintiff and then 'tactically moot' the case prior to judicial action").

Indeed, after the Court issued its show cause order, respondents persisted in their view that the Court lacked authority to grant habeas relief and that they bore no burden to justify petitioner's continued detention with clear and convincing evidence of petitioner's danger to the community. *See* Resp. to Show Cause (docket no. 14). Respondents never relented, and petitioner's release on bond was not prompted by any voluntary concession

on respondents' part, but rather was the product of petitioner's attorneys' tireless work on his behalf, as well as the Court's strong message that his request for habeas relief had merit. See Kholyavskiy, 479 F. Supp. 2d at 900 & 909 (awarding EAJA fees when a petitioner was released after the district court directed merely that a final decision about his detention be made by Immigration and Customs Enforcement within 48 hours); see also Int'l Refugee Assistance Project v. Kelly, 2017 WL 3263870 at *4 (C.D. Cal. July 27, 2017) (observing in connection with the grant of EAJA fees and costs that, with regard to Respondents' eventual exercise of discretion to release the Does from detention on parole and later to admit them into the United States, "[t]here is no evidence that Respondents would have done the same or in as timely a manner if the Court had not issued its Orders," which offered certain procedural safeguards, but did not grant the requested habeas relief).

**B.     Not "Substantially Justified"**

The Court finds equally unpersuasive respondents' argument that, regardless of whether petitioner is a prevailing party, he is not entitled to attorney's fees under EAJA because respondents' position was "substantially justified." Respondents bear the burden of demonstrating that their position was substantially justified. See Decker v. Berryhill, 856 F.3d 659, 664 (9th Cir. 2017); see also Ghanim v. Mukasey, 545 F. Supp. 2d 1146, 1151 (W.D. Wash. 2008); Kholyavskiy, 479 F. Supp. 2d at 908. Substantially justified means "justified to a degree that could satisfy a reasonable person." Decker, 856 F.3d at 664. The position need not be "justified to a high degree," but it must be more than "merely undeserving of sanctions for frivolousness." Kholyavskiy, 479 F. Supp. 2d at

908. To be "substantially justified," the position must have a "reasonable basis both in law and fact." *Decker*, 856 F.3d at 664. Because Congress intended for EAJA to be a deterrent for unreasonable agency conduct, regardless of whether the government's conduct in the federal court proceedings is substantially justified, "unreasonable agency action at any level entitles the litigant to EAJA fees." *Li v. Keisler*, 505 F.3d 913, 919 (9th Cir. 2007); *Kholyavskiy*, 479 F. Supp. 2d at 908; *see also* *Fatty v. Nielsen*, 2019 WL 1979321 at *2 (W.D. Wash. May 3, 2019) (citing *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013)).

In asserting that their position was "substantially justified," respondents offer no substantive argument, and instead cite to Chief Magistrate Judge Brian A. Tsuchida's rejected Report and Recommendation ("R&R"), docket no. 10, as evidence that their position "could satisfy a reasonable person." *See* Resp. at 5 (docket no. 21). The R&R, however, was issued before the United States Courts of Appeals for the Ninth Circuit remanded the underlying matter to the Board of Immigration Appeals, *see* Order at 2 (docket no. 13), and it was not based on a complete understanding of the posture of the proceedings. Moreover, in concluding that a prior denial of bond was justified by clear and convincing evidence of petitioner's danger to the community, the R&R relied on an erroneous view of the record. *See* *id.* at 3 n.1 (observing that the R&R's recitation of a potential 8-to-12 year sentence for the drug offense to which petitioner pleaded guilty, and for which he received a term of one year plus a day, over seven years ago, was not consistent with Washington law). Respondents' reliance on the R&R is misplaced.

In attempting to show that their position was substantially justified, respondents have made no effort to contradict the Court's previous observations that the age of petitioner's convictions undermined their weight as to his dangerousness and that, in denying petitioner's earlier request for bond, the immigration judge failed to consider petitioner's sobriety and exemplary behavior while a detainee, his mental health status, or any alternatives to detention that would sufficiently protect the community. *See id.* at 3-4. Notably, although Anthony Capese, the Government's attorney at the bond hearing held on May 28, 2019, acknowledged that the applicable standard for detaining petitioner without bond was clear and convincing evidence of a current danger to the community, *see* Tr. at Track 01 (00:01:02) (docket no. 22-1), he did not establish a basis for finding such dangerousness. *Compare id.* at Track 01 (00:01:32) (Capese indicated that petitioner had been in custody since 2012 and that he had been involved in only two disciplinary incidents while in custody, both occurring in 2017, one for fighting and one for allegedly making alcohol) *with id.* at Track 02 (00:00:00) (petitioner's counsel represented that, with respect to the accusation of fighting, petitioner was simply defending himself and no charges were brought, and that the alcohol at issue had been found in a garbage can in the dorm that petitioner shares).

The dearth of unfavorable information presented by Capese at the bond hearing suggests that, for quite some time before petitioner requested habeas relief, his confinement had not been warranted by the requisite dangerousness to the community. Respondents have not met their burden of showing that holding petitioner without bond for over 6½ years was a "substantially justified" position. To hold otherwise in light of

the facts of this case would undermine the principles underlying EAJA and discourage capable counsel from handling these types of matters.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Petitioner's motion, docket no. 20, for an award under EAJA as the "prevailing party" in this action, is GRANTED. Petitioner is entitled to $18,007.49 in attorney's fees and $151.96 in costs, for a total of $18,159.44.

(2) The Clerk is DIRECTED to enter judgment consistent with this Order and to send a copy of this Order and the Judgment to all counsel of record and to Magistrate Judge Tsuchida.

IT IS SO ORDERED.

Dated this 2nd day of December, 2019.

Thomas S. Zilly
United States District Judge